ODOM, J.
 

 This suit is brought under Act 11, Extra Session of 1915, to collect $24,985.47, this being triple the amount of loss alleged to have been sustained by plaintiff as a result of the defendant’s unlawful manipulations to monopolize and restrain the retail ice trade in the town of Bastrop.
 

 Defendant excepted to the petition on the grounds: First,' that Act 11 of 1915, Ex. Sess., under which the suit is brought, is unconstitutional ; and, second, that the petition discloses no cause of action. These exceptions were overruled by the trial judge and defendant appealed, as required by section 13 of the act.
 

 1. The ground upon which the act under consideration is attacked is that it is broader than its title and therefore violates section 16, art. 3, of the Constitution of 1921, which provides that:
 

 “Every law enacted by the Legislature shall embrace but one object, and shall have a title indicative of such object.”
 

 It is contended that the act is broader than its title, in that the object or purpose of the act, as expressed in the title, is “to protect trade and commerce against
 
 unlawful
 
 restraints, combinations, conspiracies and monopolies,” while the act itself (to quote counsel’s brief) “forbids and punishes all restraints and monopolies, both lawful and unlawful.” (Italics ours.)
 

 The identical objection was made to this act in the case of State v. American Sugar Refining Co., 138 La. 1005, 71 So. 137, 145. The court there held that the act is constitutional, saying that “the construction that only unlawful acts are referred to in the body of the act is certain.”
 

 
 *786
 
 The holding in that case is clearly correct and we adhere to it without further comment.
 

 On Exception of No Cause of Action.
 

 2. The alleged unlawful acts and manipulations of the defendant corporation and its directors are set out at great length in plaintiffs petition, which covers eight typewritten pages and seventeen separate articles. In substance, it is alleged that in the month of May, 1929, plaintiff built a plant and engaged in the manufacture and sale of ice in the town of Bastrop, where the defendant also had an ice plant and was engaged in the same business; that the retail price.of ice was then 50 cents per hundred pounds at the platform and sixty cents delivered, which price prevailed not only in Bastrop but at all other points in that territory; that it and defendant each sold ice at that price until July 19, when defendant cut the price 10 cents per hundred and plaintiff was forced to meet the cut or lose its trade; that on July 30 defendant cut the price to 20 cents per hundred at the platform and 40 cents delivered; that plaintiff again met the cut in price, being forced to do so or else close its factory; and that ice has been selling at that price ever since.
 

 It is further alleged that there are ice plants at Rayville, Winnsboro, Delhi, Vidalia, and Monroe, all in close proximity to Bastrop, which plants have the same officers and are under the same management as the plant at Bastrop; that each of said plants continues to sell ice at 60 cents delivered and 50 cents at the platform. It is further alleged that the'Louisiana Ice & Coal Company of Monroe, which is under the same management and control as the defendant, sold ice delivered at Sterlington, a point near Bastrop, at 60 cents until plaintiff entered that market, when the Monroe concern cut the price to 40 cents.
 

 It is alleged that the price of ice finally fixed by the defendant at Bastrop and Sterlington, which plaintiff was forced to meet or lose its trade, is below the cost of production; that plaintiff is operating its plant at a loss due to the unlawful price cuts made by defendant ; and that up to the date this petition was filed it had sustained a loss of $6,828.49, whereas prior to these cuts, it was operating at a legitimate profit.
 

 The petition sets out that Paul Fudicar and Fred Fudicar of Monroe and P. M. Biewer of Jackson, Miss., manage and control the defendant corporation in Bastrop and the ice plants at Rayville, Delhi, Winnsboro, Yidalia, and at Monroe, all of which corporations are owned by practically the same stockholders; that said ice plants are subsidiaries of the Louisiana Ice & Coal Company, the parent corporation, which controls them; that the fixing of the price of ice in Bastrop below the cost of production by the defendant corporation and its owners, directors, and managers was done for the purpose of driving plaintiff out of business, thus enabling defendant to monopolize the manufacture and sale of ice in Northeast Louisiana, and for the purpose of creating an illegal combine and trust, and was the result of an illegal conspiracy to restrain trade and commerce and to monopolize the ice trade.
 

 It is further alleged that the managers and directors of the said corporation have openly stated on various occasions that they did not expect to “make a dollar at the Bastrop plant so long as Tooke & Reynolds were in business, * * * and the managing officers of said Bastrop Ice & Storage Company, Inc., have openly boasted that said ice trust had two hundred and fifty thousand ($250,000)
 
 *788
 
 dollars set aside to fight ice plants that come into their territory, and that they would force your petitioner to close its plant; that they did not want to or intend to make a working agreement by which both factories could be operated at a reasonable profit, because if competition was permitted in Bastrop it would spring up in other towns in which their plants were situated; that petitioners’ plant was in their territory and that they had as well go ahead and put petitioner out of business.”
 

 They prayed for judgment against the defendant corporation and Paul Fudicar and Fred Fudicar, managing directors, in the sum of $24,989.47, “threefold the amount of damage sustained,” plus attorneys’ fees, and that their rights to sue the other corporations named be reserved.
 

 3. The object or purpose of Act 11 of 1915, Ex. Sess., as expressed in its title, is “To protect, trade and commerce against unlawful restraints, combinations, conspiracies, and monopolies, ' and to provide remedies against same.”
 

 Under section 1 of the act “Every contract, combination in the form of trust or otherwise, or
 
 conspiracy,
 
 in restraint of trade or commerce in the State of Louisiana” is declared to be illegal. (Italics ours.)
 

 Section 2 provides that, “Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of the trade or commerce within the State of Louisiana, shall be deemed guilty of a misdemeanor.”
 

 Section 3 provides that whenever a corporation shall violate any of the penal provisions of the act, “such violation shall be deemed to be also that of the individual officers, directors or agents of such corporation.”
 

 Section 4 reads as follows:
 

 “Section 4. Be it further enacted, etc., That it shall be unlawful for any person engaged in commerce, in the course of such commerce,
 
 to
 
 lease or sell, or contract for the sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption or resale within this State, or to fix a price charged therefor, or discount from or rebate upon such price, on the condition, agreement or understanding that the purchaser or lessee thereof shall not use or deal in the goods, wares, merchandise, machinery, or other commodities of a competitor or competitors of the vendor or lessor, where the effect of such sale, or contract for sale, or lease, or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.”
 

 “Section 16. Be it further enacted, etc., That any person who shall be injured in hi’s business or property by any person or corporation by reason of any act or thing forbidden or declared to be unlawful by this Act, may sue therefor in any court of competent jurisdiction and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney’s fee.”
 

 4. Act 11 of 1915, Ex. Sess., is a penal statute enacted to protect trade and commerce against unlawful restraints and monopolies. By its express provisions, whatever is done or attempted to be done by one person alone or by a combination of persons for the purpose of monopolizing any commercial trade or business, or for the purpose of restraining such trade, is unlawful. All combines and conspiracies entered into for such purposes are likewise prohibited.
 

 
 *790
 
 Plaintiff alleged in its petition that the defendant corporation had attempted to monopolize and restrain the manufacture and sale of ice in the town of Bastrop, and further that said corporation, its directors and managers, had entered into a conspiracy to accomplish that purpose. The charges set out in the petition therefore clearly bring the defendant corporation within the terms of sections 1 and 2 of the act, because section 1 makes illegal every conspiracy in restraint of trade, and section 2 declares that every person who shall monopolize or attempt to monopolize any part of the trade or commerce of the state shall be guilty of a misdemeanor.
 

 Furthermore, the petition read and construed as a whole shows that the defendant corporation, through its officers and directors, entered into a combine with other corporations under the same management and control and engaged in the manufacture and sale of ice in adjacent territory, to destroy its competitors in all that section of the state, and especially the plaintiff, which is a competitor at Bastrop, thereby giving to defendant an open field and a complete monopoly of the ice business.
 

 5. In support of their contention that plaintiff’s petition sets out no cause of action, counsel for appellant urge that the allegations that defendant and its officers and directors attempted to monopolize the ice trade at Bastrop, and that they entered into a conspiracy to accomplish that purpose, are merely conclusions of the pleader and insufficient to set out a cause of action.
 

 We think the suggestion is not well taken. The petition clearly sets out the purpose of the defendant and its officers, its method of procedure, and precisely what it and they did in order to accomplish its ultimate end. It is alleged that they reduced the price of ice to a figure below the cost of manufacture, which made it impossible for any concern to operate except at a loss and failure in the end; that the purpose of making the reduction in prices was to render it impossible for plaintiff to continue in business, so that ultimately defendant would be left without a competitor; in other words, defendants’ scheme was to destroy all competition by forcing its competitors out of the field on into bankruptcy, which would necessarily result in a monopoly of the ice trade in that section of the state.
 

 It is alleged that the defendant corporation, its officers and directors, and other related concerns, conspired to do just what was done in Bastrop and at Sterlington; that is, to reduce the price of ice to where its manufacture and sale would not only be unprofitable but destructive to the enterprise; and, further, that this corporation, its officers and directors, and other concerns under the same management, had set aside a large sum to be used in the fight to monopolize the trade.
 

 The petition does more than state conclusions ; it sets out ample facts and data to support them.
 

 6. It is next contended that plaintiff failed to allege that it had been damaged by the acts and things done by the defendant. Counsel evidently overlook the fact that it is specifically alleged that by reason of these price cuts and due to the fact that the price of ice had been reduced below the cost of manufacture, which prices plaintiff had to meet or lose its trade, plaintiff had operated its business at a loss of more than $6,000, and that it was damaged to that extent.
 

 7. It is stated in counsel’s brief “that the ice business is not actually trade or commerce but is merely a manufacturing process.” The word “trade” as used in this
 
 *792
 
 act has reference to the business of bartering, buying, or selling goods, wares, merchandise, or any article or commodity of commerce. The word “commerce” means traffic, intercourse, buying or selling, trading, etc.
 

 • Plaintiff • was not only manufacturing ice, which is an article of merchandise, but was selling it at retail and delivering it. The “ice business” so conducted is “trade,” “commerce.”
 

 8. The petition alleges that defendants attempted to create a monopoly of the ice trade or business in Bastrop. As used in this statute, the word “monopoly” “signifies the sole power of dealing in an article, or doing a specified thing, either generally or in a particular place. * * * It is considered that a monopoly exists whenever all or so nearly all of an article of trade or commerce within a community or district is brought within the hands of
 
 one man
 
 or set of men as practically to bring the
 
 handling or production
 
 of the commodity or thing within such single control, to the exclusion of competition or free traffic therein, * * * the exclusion of all others from that right and control.” (Italics ours.) 18 R. C. L. 7, § 2; 41 C. J. 82.
 

 The alleged purpose of defendants in selling ice at prices below the cost of manufacture was to drive plaintiff out of business so that they would have no competition in that territory, which, if accomplished, would bring into their hands exclusively the production and handling of an article or commodity of commerce of common use and prime necessity. If this were accomplished, they would have a complete monopoly of the trade.
 

 These acts on the part of defendants clearly constitute an attempt to create a monopoly in violation of both the spirit and letter of the law.
 

 9. Accepting as true, as we must for the trial of these exceptions, the allegations of the petition, the acts complained of constituted a combination in restraint of trade.
 

 The Bastrop lee & Storage Company and the Louisiana Ice & Coal Company of Monroe are alleged to be under the control and management of the same persons.
 

 Shortly after the former cut the price of ice in Bastrop and as soon as plaintiff went into the market at Sterlington, a nearby town, the Monroe corporation pursued the same tactics and reduced the price at Sterlington. There was patently a concert of action between the two, a combination.
 

 Aside from that, however, the Bastrop Ice & Storage Company, with its individual members, shareholders, and managers formed a combination.
 

 “Even where doubt has been expressed as to whether a corporation as an entity may be able to creáte a trust or combination with itself, it has b,een clearly laid down that members or individual shareholders may in controlling it, together with it, create such trust or combination that will constitute it, with them alike, guilty, and this is the case when it appears that the purpose of the corporation and its members, in their control of it, is to monopolize trade or fix prices and the like, whether such purpose appear in its charter, by-laws, or general activities.” 18 R. C. L. 159, 160, § 122; Ford v. Chicago Milk Shippers’ Ass’n, 155 Ill. 166, 39 N. E. 651, 27 L. R. A. 298, and note; People v. Chicago Live Stock Exchange, 170 Ill. 556, 48 N. E. 1062, 39 L. R. A. 373, 62 Am. St. Rep. 404; Reeves v. Decorah, etc., Soc., 160 Iowa, 194, 140 N. W. 844, 44 L. R. A. (N. S.) 1104, and note; State v. Wilson, 73 Kan. 343, 80 P. 639, 84 P. 737, 117 Am. St. Rep. 479; People v. Milk Exchange, 145 N. Y. 267, 39 N. E. 1062, 27 L. R. A. 437, 45 Am. St. Rep. 609.
 

 
 *794
 
 10. This alleged conspiracy and combination was “in restraint of trade or commerce” because whatever prevents competition in trade necessarily restrains trade. Trade may be restrained in more ways than one. Any and all devices and schemes which have for their purpose the suppression of competition and the control of the market necessarily tend to restrain trade in the article sought to be controlled. The basis of this law against restraints in trade is the theory that competition is the life of trade and advances public welfare. All combinations and arrangements which have for their purpose the unlawful stifling or restriction of competition, or which may probably have that effect, or necessarily have that tendency, are against public policy and unlawful.
 

 11. The test of the illegality of a combination or an attempt to create a monopoly is not what the combination or attempted monopoly has accomplished, but what • may be accomplished; not what has been done, but what may be done once the participants get in power to accomplish their purpose. If the natural tendency or probable effect of the combination or monopoly is the restraint of trade by stifling competition or to discourage enterprise and industry, the combination or monopoly is deemed to be detrimental to the public welfare and falls within the teeth of the law.
 

 12. It is suggested in argument that we must look to section
 
 4
 
 of the act to ascertain what is meant by the words “monopoly” and “monopolize” as used in the statute; that is, for a definition.
 

 That section provides: “That it shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or sell, or contract for the sale of goods * * * for use, consumption or resale * * * on the condition * * * that the purchaser or lessee thereof shall not use or deal in the goods * * * • of a competitor or competitors of the vendor or lessor, where the effect of such sale * * * may be to substantially lessen competition or tend to create a monopoly in any line of commerce.”
 

 If we are to look only to this section to find what a monopoly is, we would have to conclude that the only way to create a monopoly or to monopolize trade is for two persons to enter into a contract for the sale or lease of articles of commerce with the stipulation or agreement that the vendee or lessee shall not use or deal in the goods or wares of a competitor or competitors • of the vendor or lessor.
 

 That section sets out one way in which monopolies may be created. But we do not construe the act to mean that monopolies may not be formed or accomplished in other ways.
 

 Our attention has been called to the case of State v. McClellan, 155 La. 37, 98 So. 748, 749, 31 A. L. R. 527. In that case, the state brought an action against the defendant charging that he “did unlawfully attempt to monopolize a certain part of the trade and commerce within the limits of this state, to Wit, the laundry business in the city of New Orleans.”
 

 The defense was that the operation of a laundry was not “trade” or “commerce” in the sense in which those words are used in the statute. The defense was sustained, the court holding that: “The laundry business is not ‘trade’ -and ‘commerce’ within Act No. 11 of Extra Session 1915, §§ 2, 4, protecting ‘trade’ and ‘commerce’ against unlawful restraints, combinations, conspiracies, and monopolies, and hence no prosecution lies under
 
 *796
 
 such act for attempting to monopolize the laundry business in a city.” (Syllabus.)
 

 There are certain expressions in the opinion which seem to have been interpreted to mean that the court held that a monopoly can be created in no way except that stated in section 4 of the act. We shall npt attempt to review those expressions. Suffice it to say that the court did not intend to so hold.
 

 The only question before the court with reference to monopolies was whether the laundry business is trade or commerce. Any expressions in the opinion not pertinent to that issue are obiter dicta.
 

 The judgment appealed from is affirmed, at appellant’s costs.