See also 89 F.Supp. 768.

ILLINOIS CENT. R. R. v. CITY OF NEW ORLEANS et al.

Civ. A. No. 2676.

United States District Court
E. D. Louisiana. New Orleans Division.

Aug. 25, 1950.

Lemle, Moreno & Lemle, Selim B. Lemle, Pat F. Bass, all of New Orleans, La., for plaintiff.

Henry B. Curtis, James O'Niell, Nelson S. Wooddy, all of New Orleans, La., for City of New Orleans.

Kullman & Lang, Samuel Lang, all of New Orleans, La., for Cooperative Cab Co.

H. L. Oulliber, Jr., New Orleans, La., for Nola Cab Co.

Robert J. Oster, New Orleans, La., for Veterans Cab Co.

WRIGHT, District Judge.

In this action the Illinois Central Railroad Company seeks permanently to enjoin the City of New Orleans from enforcing an ordinance which the railroad alleges is unconstitutional and under which all properly licensed taxicabs may use the area outside of and adjacent to the plaintiff's passenger terminal, hereinafter referred to as the Illinois Central station, for picking up and discharging passengers. The railroad also seeks a permanent injunction against all taxicab owners and operators, except the taxicabs operated by the Toye Brothers Yellow Cab Company, restraining them from soliciting and picking up passengers on the premises above described which premises are leased by the railroad from the City of New Orleans.

The Illinois Central Railroad Company after owning and operating a terminal station in the City of New Orleans for many years, pursuant to an agreement (hereinafter referred to as the Terminal Agreement) entered into by the City of New Orleans and all railroads servicing the city with passenger traffic, sold to the city the site of its terminal station, together with all the improvements thereon and pursuant to the same agreement on September 8, 1949, leased the site with the improvements back from the city pending the completion of the new passenger terminal to be built under the Terminal Agreement.

Included in the demise to the City of New Orleans and the lease back to the railroad is a covered concourse, serving as the front of the Illinois Central station, together with a certain plot of land approximately 40 feet in width and 100 feet in length immediately adjacent to this concourse. This plot of land, though formerly owned by the railroad and now leased from the city by the railroad, has always been used by vehicles for discharging and picking up passengers going to and from the terminal. In addition the City of New Orleans has policed this area in order to avoid traffic congestion and has placed the customary traffic signs in appropriate locations for this purpose.

For years and continuing to date, the railroad has had in effect a contract between it and the Toye Brothers Yellow Cab Company by which the cabs of that company have the exclusive right to solicit and pick up passengers at the Illinois Central station. For this right the railroad receives $1800 per year.

On January 6, 1950, the Commission Council of the City of New Orleans adopted the following ordinance whereby it undertook to amend paragraph (3) of Section 1 of Ordinance No. 16,605 C.C.S., which governs the operation of taxicabs and other

for-hire vehicles, by redefining the term "street" as found in said ordinance. The said redefinition of the term "street" is as follows: "(e) The term 'Street' means any public street, avenue, road, boulevard, alley, lane, highway, sidewalk, public park, airport, railroad station or depot, steamship landing, ferry landing, viaduct or other public place under control of the City of New Orleans and established by it for the use of vehicles and not otherwise controlled by law or ordinance. It shall also mean all vehicular roads, driveways or areas outside of and adjacent to or in all railroad stations, steamship, steamboat or ferry landings and bus stations, owned by the City of New Orleans, which are used regularly or may be so used by taxicabs or other for-hire vehicles to pick up and discharge passengers, which places shall hereafter be and remain open to, and used by all such duly licensed vehicles, without charge and without distinction as to the ownership of such vehicles or the licensed operators thereof, and subject to the other provisions of this ordinance." Since the effective date of this ordinance all properly licensed cabs have solicited passengers in the concourse in front of the Illinois Central station and picked them up in the area immediately adjacent to it.

The railroad alleges that under its contract of lease with the City of New Orleans it has "the right to sublease or grant concessions on any portions of the demised premises for any purpose normally incident to its passenger operations thereon."[1] It alleges that the passage of the ordinance of January 6, 1950 is unconstitutional because it impairs the obligation of the city's contract with it, and that the activities of the taxicab companies, other than the Yellow Cab Company, on the concourse and in the area immediately adjacent thereto constitutes a trespass on its property and that the parties in question should be enjoined from continuing the trespass.

The defendants concede that under the contract of lease with the city the Illinois Central Railroad does have the right to sublease or grant concessions on any portions of the demised premises for any purpose normally incident to its passenger operations thereon. They contend, however, that the granting to one taxicab company of the exclusive right to solicit and pick up passengers at the station is not a concession "normally incident to its passenger operations." Defendants contend further that the area immediately adjacent to the covered concourse in front of the station is a public street and that plaintiff has no authority under its lease to control taxicab activities on such street.

Defendants further allege want of equity in plaintiff's application for a permanent injunction. They state that this want of equity consists in the unlawful monopoly granted the Yellow Cab Company by the railroad and the fact that Yellow Cabs are not available to the Negro patrons of the railroad (Ordinance No. 16,605 C.C.S., Sec. 7(g) ) and consequently such patrons are without means of egress from the station by taxicab.

The railroad predicates its demand for injunction on innumerable cases both from the Supreme Court of the United States, the Supreme Court of Louisiana and appellate courts of many other states, which seem to hold that a railroad has a right to grant an exclusive contract to one taxicab company to use the area owned by the railroad in front of its station for taxicab purposes. The defendants cite cases from appellate courts of at least twelve states which hold such exclusive contracts illegal as against public policy. Defendants further contend that in the one Louisiana case cited by the plaintiff in support of its position, Kansas City S. & G. Terminal Company v. Interurban Motor Transfer Co., 152 La. 1093, 95 So. 258, the issue of the legality of the exclusive contract was not raised.

The legality of contracts giving one taxicab company the exclusive right to pick up passengers at a railroad station is a question which has plagued courts both in this country and in England for many years. Fortunately that issue need not be reached in a disposition of this case. Here the railroad's right to sublease or grant concessions

1. Terminal Agreement, Section 56 C.

is limited by the lease between it and the City of New Orleans, and as stated above the lease provides that the railroad has "the right to sublease or grant concessions on any portions of the demised premises for any purpose normally incident to its passenger operations thereon". Is the granting by a railroad to one taxicab company the exclusive right to serve incoming passengers at the station a sublease or concession normally incident to its passenger operations? Unless this question is answered in the affirmative, this action must fail, for the railroad may exercise only those rights in the premises which were conveyed to it in the lease.

No question is raised concerning the right of the railroad to transfer through passengers from one station to another by contract carriers. Here is presented only the question of the right under the lease to grant an exclusive taxicab franchise covering passengers who conclude their journey by rail at the Illinois Central station. Stated another way, can the railroad prescribe the kind of taxicab its passengers will use after they have ended the train part of their travel? Does the lease in question give the railroad such a right?

Reasonable and intelligent minds may well and honestly disagree in answering this question and in interpreting the meaning of "concession" and "normally incident." It is obvious the city believed that no right to grant an exclusive taxicab franchise was included in the lease, otherwise Ordinance No. 17,733 C.C.S. would not have been passed. And it is just as obvious that the railroad was under the impression that a taxicab franchise is a "concession" which is "normally incident to its passenger operations." In these circumstances resort should be had to the whole lease agreement in interpreting its ambiguous and debatable provision.

Paragraph C of Section 56 of the Terminal Agreement which is made part of the lease, provides: "C. The Illinois Central shall have the right to sublease or grant concessions on any portions of the demised premises for any purpose normally incident to its passenger operations thereon. * * * It shall also retain all revenues from all

other subleases and concessions of existing or temporary facilities. From and after the date that any such sublease or concession ceases to be operated in either the present or temporary facilities as a result of the construction operations, there shall be paid to the Illinois Central until Completion Date a net monthly revenue equal to the average net monthly rental received by the Illinois Central from such sublease or concession during the six-calendar-month period next preceding the month in which the operation of such sublease or concession ceases. * * *"

A mere reading of this paragraph would indicate that its author intended that the railroad would have the right to sublease or grant concessions on "portions of the demised premises." Apparently such sublessees or concessionaires would each occupy a portion of the premises and would operate a restaurant, a newstand, a barber shop, or some similar installation. These types of operations are usually and commonly referred to as concessions, particularly with reference to railroad stations. It would seem that if the railroad wanted the right to grant a taxicab franchise, it was under an obligation to spell out such right in the lease agreement and not leave to conjecture the meaning or connotation of the word "concessions" and the phrase "normally incident." This is particularly true where a public interest is affected and the interpretation sought to be placed on the contract may be adverse to that interest. Section 236(f), Restatement of the Law of Contracts.

There is a further reason why plaintiff cannot succeed in this action. It is asking this court for equitable relief, i. e., an injunction, and the record is barren of any proof of irreparable damage or lack of adequate remedy at law. The record shows only that the right which the railroad is seeking to protect is worth $1800 per year. The lease itself (Section 56, paragraph C, supra) sets out a formula to be used in the event any sublease or concession ceases to be operated as a result of construction activities on the new terminal station. Certainly a court of law would have no difficulty in applying that formula, or at least using it as a guide, in the event a sublease

or concession is terminated for some reason other than construction activity.

There is also want of equity in plaintiff's complaint. Plaintiff would have this court enjoin all taxicab companies from competing with the Yellow Cab Company for the incoming passenger traffic at the Illinois Central station. Both the United States and the State of Louisiana have laws against monopolies. It is contended by the plaintiff that if this exclusive grant to the Yellow Cab Company is a monopoly, it is a lawful one and not one which has adversely affected the public interest. There is evidence, however, that the public has suffered as a result of this monopoly in that incoming passengers at the station with different local destinations have been loaded into the same cab. Further, a monopoly is objectionable not only because of the effect it has had but also because of the effect it may have against the public interest. Tooke & Reynolds v. Bastrop Ice & Storage Co., 172 La. 781, 782, 135 So. 239. A court of equity should be reluctant to enforce a monopoly by injunction, however legal, particularly when such injunction would restrain competition on public streets or on streets used by the public. Moreover, the City of New Orleans itself, the owner of the premises, could not grant this monopoly to the Yellow Cab Company. Constitution, State of Louisiana, Article 19, Section 14. And a court of equity should not assist the Yellow Cab Company in obtaining indirectly what it cannot obtain directly.

In view of the foregoing the application for a permanent injunction is denied.