HAMLIN, Justice
(concurring in part and dissenting in part).
I concur in the majority view that the State court has jurisdiction of this matter and that LSA-R.S. 51:142 is the law of this State.
I respectfully dissent, however, from the view of the majority that this is a case to be decided upon the face of the pleadings.
Of all the cases cited in the majority opinion, it is my opinion that the one which comes nearest to being decisive of the issues herein is National Labor Relations Board v. Gamble Enterprises, Inc., 345 U. S. 117, 73 S.Ct. 560, 563, 97 L.Ed. 864. In that case, there tvas a hearing before the trial examiner. After the hearing, the trial examiner found Gamble Enterprises to be engaged in interstate commerce and recommended that the Board assert jurisdiction. On the merits, he made certain conclusions. Thus it appears that in the Gamble case evidence was heard. In the instant case no evidence was heard; an exception of no cause of action was maintained.
In the Gamble case, supra, the United States Supreme Court stated the following which can only be determined by the hearing of evidence:
“ * * * We are not dealing here with offers of mere ‘token’ or nominal services. The proposals before us were appropriately treated by the Board as offers in good faith of substantial performances by competent musicians. There is no reason to think that sham can be substituted for substance under § 8(b) (6) any more than under any other statute.
“Payments for ‘standing-by,’ or for the substantial equivalent of ‘standing-by,’ are not payments for services performed, but when an employer receives a bona fide offer of competent performance of relevant services, it remains for the employer, through free and fair negotiation, to determine whether such offer shall be accepted and what compensation shall be paid for the work done.5”[1]
*153 In the instant case, as I interpret the plaintiff’s petition and what is urged in its brief and argument, plaintiff contends, in substance, that there never was any dispute concerning wages; that there was no labor dispute or redress of grievances involved; that defendants have a monopoly; that the sole dispute between the parties was the demand by the local union, concurred in and enforced by the national union, to require plaintiff to allow “featherbedding” at the performances held under plaintiff’s sponsorship — that is, that defendants were using their monopoly power to force plaintiff to enter into an unlawful contract and pay for wages of musicians who were unwanted and unnecessary, or for services •which could scarcely he called such. (See Gamble case, supra.) Threats and an attempt to destroy competition are also urged. It is my view that the petition states a cause of action.
Defendants have not, in their exception or during argument, made the slightest suggestion of what services, if any, their members were to perform. In argument, counsel for defendants urge that plaintiff has wronged the defendants by injustice and tyranny and has deprived their members of exercising their artistic talents and abilities. Plaintiff’s counsel contends that “the shoe is clearly on the other foot” — that it is the plaintiff who has been grievously damaged, wronged, and destroyed by the tyranny of the defendants through the use of their uncontrolled monopoly power because there was no labor dispute or redress of grievances involved. Under such circumstances, should not evidence be heard?
The case being before us on an exception of no cause of action, we must decide it on the allegations contained within the “four walls” of the pleadings.
It is elementary that for the purpose of determining questions raised by an exception of no cause of action, the well-pleaded allegations of fact contained in the petition must be accepted as true, and that a suit will not be dismissed on an exception of no cause of action if allegations of fact set forth a cause of action as to any part of the demand. Spiers v. Davidson, 233 La. 239, 96 So.2d 502, and cases therein cited. See, also, Everhardt v. Sighinolfi, 232 La. 996, 95 So.2d 632.
In view of the foregoing authorities and the allegations of the petition, I am con *155 strained to ask myself the following questions :
What services do the musicians intend to render?
Are they to merely stand by without playing an instrument?
' Are they to be a part of the orchestra during the performance?
Are they to play overtures, intermissions, and “chasers” (the latter while patrons are leaving the theater) ?
As I interpret the Gamble case, supra, facts regarding the above questions were adduced and considered therein. In my opinion, the above questions have to be answered in the instant case in order to determine whether there is a labor dispute or a redress of grievances involved under LSA-R.S. 51:142, the law under which plaintiff is proceeding.
It may be that upon the trial of the merits of this case, plaintiff may not be able to prove that there was no labor dispute or redress of grievances involved, nor the allegations of its petition. However, I feel that it should have its day in court. The present condition of the record does not enable us to properly pass upon the serious questions submitted without having evidence before us. The hearing of evidence is the only manner of determining whether (as set forth in the majority opinion) “the method used by the union or the object of its endeavor is illegal.”
I interpret the Gamble case, supra, to hold that the exaction of wages for no services is illegal. I interpret the majority opinion as inferentially condoning the forcing of “ ‘stand by’ ‘featherbedding.’ ” If I am correct, that such a situation would be untenable is an understatement.
It is a matter of common knowledge that recently the United States Senate’s Permanent Subcommittee on Investigation had hearings in Washington, and it was developed that it was demanded that men be allowed to disassemble certain equipment and put it together again, and that it was desired that men be allowed to “bless” new equipment- — stand idly by for the number of hours they would otherwise have spent assembling it while drawing full pay — thus tending to slow down the United States missile-base construction program.
The forcing of “ ‘stand by’ ‘featherbedding’ ” is a deprivation of property (money) without due process of law. United States Constitution, Amendments V and XIV, and Louisiana Constitution of 1921, Article I, Section 2, LSA.
In Louisiana we have what is known as the “deadhead” statute. LSA-R.S. 14:138. It must be conceded that “deadheading”, which by analogy is the same as “featherbedding”, is against the public policy of the State of Louisiana, insofar as state employees are concerned. LSA-R.S. 14:138 makes it an offense, with a fine of not more *157 than $1,000, or imprisonment with or without hard labor for not more than two years, or both. Paragraph (1) applies to the employee, and Paragraph (2) applies to the public officer or public employee who carries a “deadhead” on the payroll. Paragraph (1) contains the words “for services riot actually rendered by himself, or for services grossly inadequate for the payment or compensation received or to he received * * (Emphasis mine.) See, Gamble case, supra.
LSA-C.C. Art. 2675 defines the contract of letting out of labor or industry and states that it is a contract by which one of the parties binds himself to do “something” for the other in consideration of a certain price agreed upon by them both.
LSA-C.C. Art. 2745 provides that laborers may “hire their services” to another person.
It is clear to me that it is the policy of the laws that no one shall force one person to pay another for services not needed or wanted or which could scarcely be called services. Of course, this is a question of fact.
LSA-C.C. Art. 1764 provides that where the essence of the contract is wanting, there is either no contract at all or a contract of another description, giving an example that a price is essential to the contract of sale; if there be none, it is either no contract or if the consideration be other property it is an exchange. By analogy, a price and services are essential to the contract of letting out of labor or industry, and under our law the forcing of such a contract would render it void. In Ane v. Ane, 225 La. 222, 72 So.2d 485, we held that consent to a contract procured by violence or threats is void, and the contract is invalid. LSA-C.C. Arts. 1850, 1851. No authorities are necessary to uphold the proposition that a promissory note issued without consideration is void.
An obligation without a cause or with a false or unlawful cause can have no effect. LSA-C.C. Art. 1893. The cause is unlawful, when it is forbidden by law, when it is contra bonos mores (contrary to moral conduct) or to public order. LSA-C.C. Art. 1895.
In Tooke & Reynolds v. Bastrop Ice & Storage Co., Inc., 172 La. 781, 135 So. 239, 242, this Court stated:
“This alleged conspiracy and combination was ‘in restraint of trade or commerce’ because whatever prevents competition in trade necessarily restrains trade. Trade may be restrained in more ways than one. Any and all devices and schemes which have for their purpose the suppression of competition and the control of the market necessarily tend to restrain trade in the article sought to be controlled. The basis of this law against restraints in *159 trade is the theory that competition is the life of trade and advances public welfare. All combinations and arrangements which have for their purpose the unlawful stifling or restriction of competition, or which may probably have that effect, or necessarily have that tendency, are against public policy and unlawful.
“The test of the illegality of a combination or an attempt to create a monopoly is not what the combination or attempted monopoly has accomplished, but what may be accomplished; not what has been done, but what may be done once the participants get in power to accomplish their purpose. If the natural tendency or probable effect of the combination or monopoly is the restraint of trade by stifling competition or to discourage enterprise' and industry, the combination or monopoly is deemed to be detrimental to the public welfare and falls within the teeth of the law.”
It is my further view that Cust v. Item Co., 200 La. 515, 8 So.2d 361, cited in the majority opinion, is not apposite, for the reason that the facts and circumstances therein are entirely different from the facts and circumstances in the instant case. Each case must be decided on the facts and circumstances shown to exist. Each case has a peculiar and separate life of its own. The problems of one case are not the problems of another.
I respectfully dissent from the ruling maintaining the exception of no cause of action and believe that the case should be remanded.

. Footnote 5 in the Gamble ease, supra, reads as follows: “In addition to the legislative history cited in the American Newspaper ease, the following explanation by Senator Ball emphasizes the point that § 8(b) (6) proscribes only payments where no loorlc is done. As a member of the Senate Committee on Labor and Public Welfare, and as one who had served as a Senate conferee, he made it on the floor of the Senate immediately preceding the passage of the bill, over the President’s veto, June 23, 1947:
“ ‘There is not a word in that [§ 8(b) (6)], Mr. President, about ‘featherbedding.’ It says that it is an unfair *153 practice for a union to force an employer to pay for work which, is not performed. In the colloquy on this floor between the Senator from Florida [Mr. Pepper] and the Senator from Ohio [Mr. Taft], before the bill was passed, it was made abundantly clear that it did not apply to rest periods, it did not apply to speed-ups or safety provisions, or to anything of that nature; it applied only to situations, for instance, where the Musicians’ Federation forces an employer to hire one orchestra and then to pay for another Stand-by orchestra, which does no work at all.’ (Emphasis supplied.) 93 Cong.Rec. 7529.”