We are of the opinion that express companies were not intended to be included and fall under the provisions of section 2 of the act.

The judgment appealed from is, in our opinion, correct; and it is hereby affirmed.

MONROE and PROVOSTY, JJ., concur in the decree.

———

(46 South. 685.)

No. 16,912.

LEWIS v. HUIE-HODGE LUMBER CO.,
Limited.

(May 25, 1908.)

1. ACTION FOR DAMAGES—WHEN MAINTAINABLE.

A person has an absolute right himself to refuse to have business relations with others, whether the refusal is based upon reasons, or is the result of whim, caprice, prejudice, or malice. "Neminem lædit qui suo jure utilur."

2. SAME—COMPETITION IN BUSINESS.

Every man has a right to use the fruits and advantages of own enterprise, skill, and credit. He has no right to be protected from competition, but he has the right to be protected from wanton, malicious interference, disturbance, or annoyance. If the disturbance or loss comes as a result of competition, it is damnum absque injuria, unless some superior right by contract or otherwise is interfered with.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Torts, § 10.]

3. SAME—MALICIOUS ACTS.

If it comes from merely wanton or malicious acts of others, without the justification of competition or service of any interest or lawful purpose, it then stands on a different footing. A right is then enlarged into a wrong.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Torts, § 10.]

(Syllabus by the Court.)

Appeal from Fifth Judicial District Court, Parish of Jackson; George Wear, Judge.

Action by J. J. Lewis against the Huie-Hodge Lumber Company, Limited. Judgment for defendant, and plaintiff appeals. Affirmed.

Clayton, Hawthorn & Atkinson, for appellant. Barksdale & Barksdale, for appellee.

### Statement of the Case.

NICHOLLS, J. The plaintiff appeals from a judgment of the district court rejecting his demand and dismissing his suit.

The prayer of his petition was for judgment in his favor for $10,000 as damages resulting from the following facts:

"That defendant company was engaged in the manufacture of lumber, and owns and operates large sawmill plants in Jackson and Bienville parishes, La.; that in connection with the sawmill plant which is situated at Hodge, Jackson parish, La., it employs a large number of men, and owns and operates at Hodge, La., a large commissary or general mercantile store for the purpose of selling its employés and the general public for profit such goods and merchandise as are usually handled and sold in a general mercantile establishment; that for several years the said defendant corporation was without competition at Hodge, La.; that on or about the —— day of ——, 190—, your petitioner purchased property and opened up a general mercantile business at or near Hodge, Jackson parish, La.; that he expected to be able to make a living and accumulate some money out of the profits of his said business; that since your petitioner has been engaged in said mercantile business he has devoted practically all of his time and energies to it, and that his expectations would have been realized, and he would have been able to make a good living and accumulate some money out of the profits of his said business, but for the tortious, willful, and malicious acts of defendant, through its managers and agents, as hereinafter more fully set forth; that defendant has persuaded wholesalers and jobbers to refrain from selling to your petitioner on the threat of the said corporation refusing to buy from or patronize said wholesalers and jobbers; that it has prevented its employés and others from buying from your petitioner under threats of discharge, and otherwise intimidating said employés and others; that said defendant was enabled to persuade said wholesalers and jobbers not to sell to your petitioner by reason of the large business it could give to said wholesalers and jobbers; that said corporation was thus enabled to give jobbers and wholesalers large orders for goods by reason of the extensive patronage given it by its various employés, who by threats of discharge, intimidation, and other severe and drastic measures were and are practically forced to withhold their patronage from your petitioner and made to give it to the store or commissary of defendant.

"Your petitioner further represents that said defendant corporation has illegally and unfairly used all the power of its great wealth and commercial standing to ruin the business of your petitioner, and to prevent petitioner from buying said goods at any price or on any terms, as was necessary to the conduct of his said business, and to sell to such persons as he had a legal right to sell to; that said defendant corporation had been able to persuade wholesale houses and jobbers not to sell to your petitioner, even for cash, goods and merchandise for the purpose of replenishing and keeping up his stock; that it had threatened to withdraw its patronage from said wholesalers and jobbers if said wholesalers and jobbers should sell to your petitioner; that said threats had been effective by reason of the large orders given to said wholesalers and jobbers by said defendant; that petitioner had been forced by reason of the aforesaid and other illegal acts of defendant, notwithstanding he resided only a few hundred yards distant from the station at Hodge, La., and has in many instances even offered cash in advance for goods, to have many of his goods shipped to Jonesboro station, three miles south of the said Hodge station on the same line of railroad; that wholesalers and jobbers have refused to sell to your petitioner and ship the goods to Hodge, La., on account of the aforesaid threats and other illegal and unfair methods of defendant corporation; that in addition to being compelled to have his goods shipped to Jonesboro, as aforesaid, he has been compelled in most instances to have said goods marked and shipped to persons interposed at Jonesboro, La., in order to prevent the knowledge of petitioner buying said goods from the threatened wholesalers and jobbers, as aforesaid, from reaching said defendant; that by reason of the aforesaid inconvenience, expense, vexations, and delays which your petitioner has been subjected to by the aforesaid illegal, willful, and tortious acts of defendant, your petitioner has been prevented from buying at competitive prices, and forced to pay greater freight rates, besides subjecting him to much additional expenses and great inconveniences in paying the additional freight from Hodge to Jonesboro, and paying for its transportation from Jonesboro back to Hodge overland; that said expenses and inconveniences have been intensified by the rough and almost impassable wagon roads through a muddy swamp and over a large stream, and inability to get teams to haul said merchandise, resulting in further delays and expenses and damages to petitioner's goods.

"Petitioner further represents that said corporation has, to his great injury as aforesaid,

prevented by unfair and illegal means large numbers of people from trading with or patronizing your petitioner; that defendant corporation has discharged some of its employés and threatened to discharge others because they patronized or expressed a desire to patronize your petitioner; that said defendant corporation, through its manager and agents, has posted in conspicuous places about its mill shed and other public places notices threatening to discharge and calculated to intimidate its employés if they or any of them should trade with your petitioner, instead of defendant; that your petitioner has been compelled at much expense and trouble to deliver merchandise to his customers and patrons after dark and before daylight, to prevent said defendant corporation learning if its employés patronized your petitioner; that he has lost the sale of many thousand dollars' worth of goods, and the subsequent loss of profit, by reason of the close surveillance of the said defendant corporation over its employés in its efforts to prevent its said employés from trading with your petitioner; that the aforesaid and other illegal acts of said defendant corporation has almost ruined petitioner's business, and has forced him to buy goods from jobbers and wholesalers at such prices as they may have seen fit to charge.

"Petitioner further represents that he has been damaged by reason of his inability to buy goods at competitive prices from wholesalers and jobbers by reason of the aforesaid illegal acts of defendant in the full sum of $2,000; that he has been damaged on account of the expenses and trouble and vexation to which he had been put, having to haul many of his goods from Jonesboro, when he could get them at all, and the increased price he has been compelled to pay for goods, in the full sum of $500; that he has been damaged on account of the loss of profits and otherwise, by reason of defendant corporation preventing its employés and others from patronizing your petitioner on account of threats and otherwise intimidating its employés and others, as above alleged, in the full sum of $2,000; that he has been damaged in having to deliver goods and merchandise before daylight and after dark, and other unnecessary trouble and expense, to prevent the knowledge of defendant's employés trading with your petitioner from reaching your defendant, as aforesaid, in the full sum of $500; that for all the aforesaid illegal, willful, and malicious acts of said defendant he is entitled to the further sum of $5,000 punitive damages."

After filing an exception, which it is unnecessary to specially refer to, in view of the conclusion which we reach on the demand of the plaintiff, defendant answered, pleading a general denial.

Plaintiff has appealed.

## Opinion.

The act of which the plaintiff principally complains is the posting by Huie (the manager of the defendant company) of the following notice in different parts of its mill, Huie admits having done so.

### "Loyalty.

"We are loyal to our American government. We will fight and die for our country. This is right and proper. We should be loyal to our government, state, and parish. We should likewise be loyal to the company for which we work and get our bread and butter. When we cannot be loyal to the company for which we work, we should quit at once and engage with one that has rules and regulations we like, and one that we can stand by and swear by. What would the government do with a quartermaster who was working for Uncle Sam and buying all his provisions and clothing from China or Japan? We feel like you or any one else would feel when you go elsewhere and buy your goods.

"If you cannot be loyal and buy from us, quit and go where you can be satisfied. Do not pretend to be loyal when in fact you are working against our interests.

"This talk is in the best of feeling, but I want you to stop and think about this matter seriously, for we are in earnest.

"Yours truly, R. W. Huie, Manager."

The other acts charged are that the defendant company, by reason of threats made to drummers that it would not deal with the houses which they represented if they sold to the plaintiff, he had been greatly injured. Plaintiff relies upon the fact that in Graham v. Railroad Company, 47 La. Ann. 214, 16 South. 806, 27 L. R. A. 416, 49 Am. St. Rep. 366, and Webb v. Drake, 52 La. Ann. 290, 26 South. 791, this court rendered judgment in favor of the plaintiff against Newman (the defendant's manager) in the first, and against all the defendants in the second case.

The facts of each of the cases cited were entirely different from those disclosed by the testimony taken in the one presently before us.

In the first place, there is no pretense in this case that the defendant company entered into any combination with others to injure the plaintiff. If any wrong was done

plaintiff, it was done by the defendant company acting singly. In the next place, defendant company was not acting wantonly and maliciously to injure the plaintiff without any valid reason or cause, moving it in its own interest in the premises. The animus which led the defendant to take the course it did was not to injure the plaintiff, but to protect and safeguard its own business interest.

The Graham Case was twice before this court—once on an appeal from the judgment of the trial court, sustaining an exception made by the defendant that plaintiff's petition disclosed no cause of action, and next on an appeal from a judgment of the district court rendered on the merits after a reversal by this court of its original judgment upon the exception.

On the merits it was found that Newman, the manager of the railway company, had, without any knowledge or consent on its part, made use of his official position to discharge some of the company's employés for the reason that they had purchased goods from plaintiff's establishment, and had threatened to discharge others, should they do so. The men who were so discharged and threatened to be discharged were not acting to the prejudice of the business of the defendant company.

It is true that, in discharging and threatening to discharge the men, he was not acting simply from spite or ill-will or malice towards Graham, but in order to advance the interest of one of his tenants, who was carrying on a store in competition with Graham; but the men upon whom he brought the power of his official position to bear were not his own employés, but those of the railway company, whom he had only had the right to discharge or refuse to employ for reasons connected with the business and interests of that company.

He had no legal right to exert the power of his official position over the employés of his employer for his own private advantage, to the prejudice of Graham.

The Webb Case presented factors influencing the decision therein which are entirely absent from the present one. The defendants in that case were not acting singly, each controlling his own conduct; but they had joined together in order to destroy plaintiff's business. That business was one which did not enter into competition with that of any of the defendants, but was entirely distinct from it.

Had plaintiff's counsel, after writing and drawing up their petition, tested it by legal principles announced in the first Graham Case, they would have seen at once that it would at once be dismissed on an exception of no cause of action.

The opinion in that case recognized as correct a legal proposition that a person had an absolute right to have business relations with any person whomsoever, whether the refusal is based upon reasons, or is the result of whim, caprice, prejudice, or malice, and there is no law which forces a man to part with his property.

The court quoted approvingly from the Supreme Court of Texas in Delz v. Winfree, 80 Tex. 400, 16 S. W. 112, 26 Am. St. Rep. 755, to the effect that:

"Every man has a right to use the fruits and advantages of his own enterprise and skill and credit. He has no right to be protected from competition; but he has the right to be protected from wanton and malicious interference, disturbance, or annoyance.

"'If the disturbance or loss come as a result of competition, or the exercise of like rights by others, it is damnum absque injuria, unless some superior right by contract or otherwise is interfered with. But if it comes from merely wanton or malicious acts of others, without the justification of competition or service of any interest or lawful purpose, it then stands on a different footing.'

"In the case at bar defendant has committed the error of enlarging a right into a wrong and applying to it the maxim, 'Neminem lædit qui jure suo utilur.'"

In Robinson v. Texas Pine Land Association (Tex. Civ. App.) 40 S. W. 843, the de-

fendant, who sold the same kind of goods as plaintiff, threatened to discharge its employés if they traded with plaintiff, and told them their pay checks, made good for merchandise at its store and nontransferable, would not be received when they passed through plaintiff's hands. The court said:

"The principles stated in Delz v. Winfree, 80 Tex. 400, 16 S. W. 111, 26 Am. St. Rep. 755, apply in this case. See, also, Graham v. Railroad Co., 47 La. 214, 16 South. 806, 27 L. R. A. 416, 49 Am. St. Rep. 366. According to plaintiff's allegations competition in trade existed between plaintiff and defendant, and it was legitimate for defendant, to appropriate to itself all the customers it could command, even to the extent of driving plaintiff out of business, provided the means used for that purpose did not contravene any law or violate a definite legal right of the plaintiff. The latter had no legal right to protection against competition. He had no superior right to the trade of defendant's employés or that of other persons. Pollock on Torts, 408. The statute in reference to conspiracies against trade does not apply to this case, where there is no combination, and when the acts complained of as affecting competition are the acts of defendant alone. If the defendant could so control its employés as to prevent their dealing with plaintiff, or so control their wages as to divert them from the channel of plaintiff's business in favor of its own, we know of no rule making it actionable. Had the defendant no proper interest of its own to subserve in so doing, but had acted wantonly in causing loss to plaintiff, the rule would be different. The fact that defendant's purpose by its acts was to break plaintiff up in business would not give the cause of action, for that is the natural result of successful competition. Defendant might at any time have stopped the issuing of checks, and plaintiff could not have complained. It had a right, if the employés were satisfied to work on such terms, to pay the latter directly in goods, and it could not complain, or in checks redeemable in goods only by them and certain other persons.

"It could not be required to treat the checks as money in the hands of other persons, which is practically a contention of plaintiff. If they could stop the system altogether without giving a right of action in tort, it would follow that they could place restrictions on the use of checks without incurring such liability. This is not a suit to recover the value of checks taken by appellant, but one in which he seeks to recover in tort for the invasion of a right, when he fails to show the existence of any right. A system whereby such checks would be honored in the hands of any one except plaintiff was calculated to insure trade at defendant's store and diminish that of its rival; and, as plaintiff has no definite right to the public trade, he has no legal right to complain that defendant absorbed it by the manner of managing its business and its relation with its employés."

Defendant's counsel refer the court to Cooley on Torts, 688; Railroad Co. v. Greenwood, 2 Tex. Civ. App. 76, 21 S. W. 559; Payne v. Railroad Co., 13 Lea (Tenn.) 507, 49 Am. Rep. 666; Banks v. Eastern Ry. & Lumber Co., 90 Pac. 1048, 11 L. R. A. (N. S.) 485.

We are of the opinion that the judgment appealed from is correct, and it is hereby affirmed.