PICKETT, Judge.
This suit was instituted by Otis W. Jos-lyn, and Consolidated Advertisers, Inc., (hereinafter referred to as Joslyn and Consolidated) against the defendants, Douglas L. Manship, (hereinafter referred to as Manship) a resident of East Baton Rouge Parish, Louisiana, and Louisiana Television Broadcasting Corporation (hereinafter referred to as La. T. V.), a Louisiana Corporation domiciled in East Baton Rouge Parish, Louisiana. For a cause of action the plaintiffs alleged that for many years they have been engaged in the business of advertising agents in the full scope and meaning of that term; and that they have been recognized by the defendants as bona fide advertising agents for a long period of time, during which time they have been responsible for the placement and/or purchase of advertising time from defendants in a very substantial amount. They further allege that on July 21, 1965, the defendants willfully, capriciously, and without any substantial cause whatsoever ceased to recognize plaintiffs as bona fide advertising agents. Plaintiffs then allege that defendants’ actions constituted an actionable offense or quasi-offense under the laws of Louisiana and further said acts constituted a breach of an actual or implied contract or quasi contract with plaintiffs; and that they are entitled to relief therefrom. The plaintiff seeks a money judgment and injunctive relief. The defendants answered with a general denial of liability. The case was tried and the lower court rendered judgment in favor of the plaintiffs and against the defendants, in solido, for the sum of $1,750, with legal interest from judicial demand until paid and all cost of suit. Applications for a new trial filed by both plaintiffs and defendants were refused. The defendants have appealed; and the plaintiffs have answered the appeal.
After an examination of the transcript of evidence, which consists of over three hundred pages, and exhibits filed in evidence, we find the trial judge has concisely summarized the pertinent parts of the evidence, in his written reasons for judgment, as follows:
“The advertising agency receives a 15% commission on total dollar time pur *22 chased from the defendant on behalf of its client. The evidence disclosed that this commission was allowed for a number of reasons. One of these reasons being that the agency was responsible for securing a buyer for advertising time. (Exhibit-7, TR-8). And for the further reason that the agency performs certain services for the media. (TR-7). The testimony disclosed that similar medias such as radio secure most of their advertising time sales through agencies. (TR-269). Thus, the commission which flowed to plaintiff was based on his placing business with the media and performing certain services, as well as, for being financially responsible. Regardless of the fact that the plaintiff was presently not performing services, he was available to perform any service for Holsum and the media as he had in the past. It is also significant that he represented this client for the past 12 years. (TR-20). During this time the plaintiff placed business with La. T. V. for several hundred thousand dollars. Testimony disclosed that Joslyn has been recognized by over 100 radio, T.V., and newspaper firms. (Ex. 22-23) These exhibits demonstrate that Joslyn did a large volume of business and paid his accounts properly and promptly.
Against this background, there was testimony to the effect that the sole reason for the withdrawal of recognition was that a notice of tax levy had been served on La. T. V. (Ex.-38). There was not one item of testimony introduced showing that an agent had ever been deprived of recognition due to a notice of tax levy being served. But the custom of the trade disclosed that recognition had only been withdrawn for failure to pay, or slow payment, of bills. It was also withdrawn for incompetence in performing services for the media.
The testimony disclosed that the defendant was not even sure what the notice of levy actually meant. (TR-27, 34). The defendants assumed he was in financial trouble. (TR-34, 63, 132, 135). At the meeting held without contacting Joslyn or Bennett the only item relied on in revoking recognition was the notice of tax levy. They made no independent investigation nor did they make any attempt to contact Joslyn who had done business with them for 12 years. (TR-135).
It is important to note that no evidence was presented showing that recognition had ever been withdrawn on the sole basis that a notice of tax levy had been served. The customs of the trade disclosed that all past withdrawals of recognition were for not paying bills on time. (TR-151).
After the receipt of the letter withdrawing recognition the testimony disclosed that Joslyn repeatedly attempted to discuss the matter with defendant Manship, but encountered difficulties because Manship was out of town. When the meeting was finally arranged the testimony disclosed that Manship made no definite statement, which he was positive of, as to when recognition would be reestablished, or whether Joslyn would receive the back commissions. (TR-39, 40, 156) Mr. Foy Bennett stated that at the second meeting Mr. Mayeaux could not state what policy had been broken and was vague as to when Joslyn might be reinstated.”
The Mr. Mayeaux mentioned above is Jules Mayeaux, general manager of La. T. V.; and Mr. Bennett, supra, is Foy L. Bennett, general manager of Cotton’s Hol-sum Bakery in the Baton Rouge area.
Counsel for appellants and counsel for appellees apparently agree on the relationship of the parties herein involved. Counsel for appellants have explained that relationship as follows:
“A relationship of advertisers, advertising agencies/agents and media is of paramount significance. The agent is selected and hired by the advertiser to plan *23 and coordinate advertising, to determine the proper medium (TV station, radio station, newspaper, etc.) on which to advertise, and to engage the advertising time or space from the various media. The advertiser pays the agent on the basis of the charges made by the medium. When the agent contracts with a medium for advertising time, the agent becomes responsible to the medium for payment. The medium bills the agent at the rate of one hundred percent (100%) for the time. A recognized agent is authorized to remit to the medium eight-five percent (85%) of the charge and retain fifteen percent (15%) as commission. It is by virtue of the retained fifteen percent (15%) that the agent receives income from the medium. If there is no agent involved, the medium bills the advertiser directly but the advertiser is not allowed to deduct fifteen (15%) percent when making payment.”
The evidence shows conclusively that appellants ceased to recognize appellees as advertising agencies/agents, and refused to deal with them.
The Trial Judge has outlined the issues in this case as follows:
“The predominating issue in this lawsuit is whether La. T. V. and its president are liable to the plaintiffs by withdrawing recognition and refusing to deal with them until certain accepted standards of recognition were complied with. The plaintiff’s relationship with Cotton Hol-sum Bakery, its client, was terminated as pertaining to purchases of advertising time from La. T. V. due to this withdrawal of recognition. Plaintiff thus incurred the loss of the 15% commission which normally would have accrued to it if the agency recognition had been retained by La. T. V.
Five theories for recovery are posed by the plaintiff but basically these five allegations boil down to two theories: (1) tort theory of interference with a business relationship, or (2) contract or quasi-contract theory. Plaintiff’s chances of recovery will be assessed from these two standpoints.”
The appellees seriously contend that the actions of the appellants have caused them damages for which they are entitled to recover under the provisions of Louisiana Civil Code Article 2315, which in part provides :
“Every act whatever of man that causes damages to another obliges him by whose fault it happened to repair it * * sjc
Appellees argue that the continued refusal of appellants to recognize appellees as advertising agencies/agents and to deal with them resulted in actionable damages, specifically in the loss of Holsum as a client. In determining whether or not C. C. Article 2315 applies in this case, it is necessary to determine whether or not appellants, under the circumstances, owed a duty to appellees, the breach of which duty proximately caused appellees to suffer damages. The determination of that issue depends on the resolution of appellants’ contention that they had the absolute right to refuse to deal with the appellees.
The general rule for tort liability for refusal to contract is expressed in 86 C.J.S. Torts § 4, p. 925, as follows:
“A refusal to continue a business relation which is terminable at will does not impose tort liability for the harm thereby resulting whether the harm is intended or unintended.”
In Hunt v. Simonds, 19 Mo. 583, 586, the court expressed the general rule concerning tort liability for refusal to deal with another, as follows:
“It is obviously the right of every citizen to deal or refuse to deal with any other citizen, and no person has ever thought himself entitled to complain in a court of justice of a refusal to deal with him, except in some cases where, by reason of the public character which a party sus *24 tains there rests upon him the legal obligation to deal and contract with others.”
The general principles of tort law cited above, are stated in Restatement, Torts § 762, as follows:
“One who causes intended or unintended harm to another merely by refusing to enter into a business relation with the other or to continue a business relation terminable at his will is not liable for that harm if the refusal is not:
(a) a breach of the actor’s duty to the other arising from the nature of the actor’s business or from a legislative enactment, or
(b) a means of accomplishing an illegal effect on completion, or
(c) a part of a concerted refusal by a combination of persons of which he is a member.”
The foregoing common law statements of principles seem to be consistent with Louisiana Jurisprudence, as set forth in the syllabus by the court in Lewis v. Huie-Hodge Lumber Company, Ltd., 121 La. 658, 46 So. 685, as follows:
“A person has an absolute right himself to refuse to have business relations with others, whether the refusal is based upon reasons, or is the result of whim, caprice, prejudice, or malice.”
Graham v. St. Charles St. Railroad Company, 47 La.Ann. 214, 16 So. 806, which was cited with approval in the Lewis case, supra, in effect held that a person has an absolute right to refuse to have business relations with any person whomsoever, whether the refusal be based upon reason, or be the result of whim, caprice, prejudice or malice, and that there is no law which can reach him for so doing. But it was held that it is equally true, that he can not always, from such motives, influence another person to do the same without incurring legal liability. Therefore, the Louisiana jurisprudence is clear that the appellants had an absolute right, in the absence of any duty owed to appel-lees, to refuse to deal with them. There was no contract between the parties. The appellants had television time to sell; and they had the right to sell the time to advertisers through their agents or refuse to sell it. Since there was no contract between the parties, appellants owed the ap-pellees no duty to deal with them. For the foregoing reasons, we find that appellees cannot recover from appellants under the provisions of C.C. Article 2315.
The Trial Court awarded appellees a judgment under the concept of a quasi-contractual or unjust enrichment theory. The Louisiana Supreme Court outlined five prerequisites to a right to recover in quasi-contract in Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422, 432, to-wit:
“There are now five prerequisites to the successful suit by actio de in rem verso: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting improverishment, (4) there must be an absence of ‘justification’ or ‘cause’ for the enrichment and impoverishment, and finally (5) the action will only be allowed when there is no other remedy at law, i. e, the action is subsidiary or corrective in nature.”
There was an enrichment to La. T. V. Appellees, as the agents of Holsum, had bought television time for their client, Hol-sum, from La. T. V, and under the arrangement they were entitled to retain fifteen percent (15%) of the cost of the advertising, as their commission. After La. T. V. withdrew their recognition of appel-lees as advertising agents, although the purchases of advertising time continued in the same amount as before the withdrawal of the recognition, La. T. V. received the fifteen percent commission that appellees had previously received. Therefore, appel *25 lants were enriched to the extent of fifteen percent of the cost of the advertising time, and appellees were impoverished in a like amount because of their failure to receive it. According to the evidence the volume of business received from Holsum was the same after the withdrawal of recognition of appellees, as it was before the withdrawal, until December 1, 1965. The evidence of Foy L. Bennett, general manager of Hol-sum in the Baton Rouge area testified that appellees would still have been Holsums agents for advertising, if appellants had not withdrawn their recognition. It was stipulated by appellants that the advertising time purchased by Holsum from July 21, 1965, to December 1, 1965, amounted to $11,671.50. From the foregoing it is clear that the third prerequisite for the unjust enrichment action was met because the enrichment of the appellants was definitely related to the impoverishment of the appel-lees, for the reason that the appellants received the fifteen percent commission that the appellees should have received had their recognition not been withdrawn.
The fourth prerequisite is absence of justification for the enrichment. The evidence discloses that the only reason given by appellants for their withdrawal of recognition was the receipt of a tax levy from the Internal Revenue Department, from which they assumed that appellees were financially irresponsible. This assumption was made without giving appellees an opportunity to explain whether or not they owed the tax levy; or without any investigation to determine whether or not the tax levy was just. We conclude the action of the appellants in withdrawing their recognition of appellees was not jusified, and, in fact, contrary to the usages and customs of this type of relationship. We find the record fails to disclose any other remedy available to the appellees than the remedy here pursued. Therefore, the appellees are entitled to recover under the quasi-contract concept. Louisiana Civil Code, Articles 2292, 2293 and 2294. In Minyard v. Curtis Products, Inc., supra, the court pointed out the unjust enrichment principles as follows :
“In all civil matters, where there is no express law, the judge is bound to decide according to equity. La. Civil Code art. 21 (1870). There is, moreover, in our law the moral maxim 'that no one ought to enrich himself at the expense of another.’ La.Civil Code art. 1965 (1870). This latter article announces the principle of unjust enrichment.”
We agree with the Trial Court that the recovery by appellees should be limited to the amount of the commissions they would have received from July 20, 1965, when the dispute arose, until December 1, 1965, when Holsum hired a new agent. The Trial Court found the amount of time purchased during that period of time was $11,671.50, and fifteen percent of that amount was due the appellees, or the sum of $1,750.72. We concur in that award.
We, also, agree with the lower court that the evidence does not justify recovery for damages to the reputation of appellees; and that the claim for attorneys’ fees should be denied.
We are unable to agree with the Trial Judge that Manship should be held solidarily liable with La. T. V. Manship received no enrichment as a result of ap-pellees being deprived of the fifteen percent commission, which was received by La. T. V. Since Manship was not unjustly enriched because of appellants’ refusal to deal with appellees, a judgment should not have been rendered against him.
For the foregoing reasons, the judgment appealed from is affirmed as to the Louisiana Television Broadcasting Corporation, and annulled and set aside insofar as it cast Charles P. Manship. Costs of this appeal to be paid equally by appellees and the Louisiana Television Broadcasting Corporation.
Affirmed in part, reversed in part, and rendered.