John W. DUSSOUY, Jr.,
Plaintiff-Appellant,

v.

GULF COAST INVESTMENT CORPO-
RATION, Defendant-Appellee.

No. 80–3301.

United States Court of Appeals,
Fifth Circuit.*

Nov. 5, 1981.

Rehearing Denied Dec. 2, 1981.

* Former Fifth Circuit case, Section 9(1) of Public
Law 96 452—October 14, 1980.

M. H. Gertler, New Orleans, La., for plaintiff-appellant.

Michael H. Bagot, John H. Gniady, New Orleans, La., for defendant-appellee.

Before WISDOM, GEE, and POLITZ, Circuit Judges.

WISDOM, Circuit Judge:

This case requires us to determine (1) the propriety of denying the plaintiff a third opportunity to amend his complaint one week before trial and (2) the sufficiency of a complaint alleging violations of Louisiana unfair competition law. The questions require us to explore Louisiana antitrust law and to determine when and to what extent the Federal Rules of Civil Procedure require a plaintiff to choose a theory and articulate it specifically. We conclude that the liberal federal pleading rules require that the plaintiff receive another opportunity to state his complaint. We conclude also that Louisiana antitrust law recognizes the cause of action asserted by the plaintiff.

The plaintiff, John W. Dussouy, Jr., an insurance salesman, alleged that a customer requested him to obtain insurance for a home that she and her husband were about to purchase. Dussouy issued a binder on Travelers Insurance Company, but the lawyer representing the lender, Gulf Coast Investment Corporation, informed Dussouy that the binder was unsatisfactory to Gulf Coast. The customer then obtained a policy from Allstate Insurance Company.

Dussouy filed an action in Louisiana state court against Gulf Coast and Allstate, alleging a conspiracy in restraint of trade in violation of La.Rev.Stat.Ann. § 51:121 et seq. (West 1965) and a tortious interference with Dussouy's business in violation of La. Civ.Code Ann. art. 2315 (West 1979). Basing jurisdiction on diversity of citizenship, the defendants removed the action to the federal district court for the Eastern District of Louisiana. There, they moved for a more definite statement of the facts under rule 12(e), Fed.R.Civ.Pro. The magistrate granted the motion, and the plaintiff amended his complaint, alleging further facts tending to show a conspiracy between Gulf Coast and Allstate as well as further facts supplementing its allegation of tortious interference. The defendants responded with a motion to strike the complaint for failure to allege the conspiracy with sufficient particularity. Although the magistrate denied the motion to strike, he did order the plaintiff to state more specifically the facts alleged to establish the conspiracy. The plaintiff amended the complaint a second time.

In discovery, the plaintiff learned that Gulf Coast had not directed his former customers specifically to Allstate and concluded that Allstate had not been a party to a conspiracy. As a consequence, he voluntarily moved to dismiss Allstate from the action, with prejudice, while reserving in full his rights against Gulf Coast. Gulf Coast then moved for dismissal of the complaint against it. The trial court granted the motion, reasoning that since conspiracy is an element of a cause of action under La.Rev. Stat.Ann. § 51:121 et seq. and the plaintiff no longer alleged a conspiracy, the complaint failed to state a claim upon which relief could be granted. The plaintiff moved to vacate the dismissal and to amend his complaint by alleging a conspiracy between Gulf Coast and the lawyers representing Gulf Coast at the closing. After the denial of that motion, the plaintiff took this appeal.

On appeal, the plaintiff urges us to reverse the trial court on any of three theories. First, he urges that the trial judge abused his discretion in refusing leave to amend. Second, the plaintiff asserts that, under Louisiana law, a corporation can conspire with its employees and, therefore, his complaint, without further amendment, is sufficient to state a cause of action under La.Rev.Stat.Ann. § 51:121 et seq. Finally, noting that an action for tortious interference with business under La.Civ.Code Ann. art. 2315 requires no combination or conspiracy, he argues that his complaint as it stands states a cause of action under that provision. Agreeing in substantial part with the plaintiff, we reverse.

I. Should the trial court have permitted the plaintiff to amend his complaint?

■ Rule 15(a), Fed.R.Civ.Pro., governs amendments to pleadings.[1] Although the plaintiff is allowed, as a matter of right, one amendment before any responsive pleading has been filed, subsequent amendments are permitted only with leave of the trial judge. Appellate review of the decision to grant or deny leave is generally described as limited to "determining whether the trial court abused its discretion". *Henderson v. United States Fidelity and Guaranty Co.*, 5 Cir. 1980, 620 F.2d 530, 534, cert. denied, 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980); *see Nevels v. Ford Motor Co.*, 5 Cir. 1971, 439 F.2d 251, 257; 6 C. Wright & A. Miller, Federal Practice and Procedure § 1484 (1971).

■ At the outset, we note that the court's task of reviewing this case would have been lighter if the trial judge had given reasons for denying the plaintiff's motion to amend. Although the absence of an explanation of the denial need not always result in reversal, *Rhodes v. Amarillo Hospital District*, 5 Cir. 1981, 654 F.2d 1148, the reasons would have to be readily apparent, particularly in view of the liberal position of the federal rules on granting amendments. Fed.R.Civ.Pro. 15(a); *see generally Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226 (1962); *Hilgeman v. National Insurance Co. of America*, 5 Cir. 1977, 547 F.2d 298, 303. We find no such obvious reasons here.

■ In our review of the trial court's exercise of discretion, rule 15(a), of course, provides the starting point. "Discretion" may be a misleading term, for rule 15(a) severely restricts the judge's freedom, directing that leave to amend "shall be freely given when justice so requires". It evinces a bias in favor of granting leave to amend.

---

1. In this case, a judgment of dismissal had been entered at the time of the offered amendment. Granting the plaintiff's motion, therefore, would require the trial court to vacate the judgment. On the day of the judgment, the plaintiff properly moved the court to do so. *See* Fed.R. Civ.Pro. 59(e). Where judgment has been entered on the pleadings, a holding that the trial court should have permitted amendment necessarily implies that judgment on the pleadings was inappropriate and that therefore the mo-

tion to vacate should have been granted. Thus the disposition of the plaintiff's motion to vacate under rule 59(e) should be governed by the same considerations controlling the exercise of discretion under rule 15(a). Consequently, our discussion of the motion under rule 15(a) applies equally to the motion under rule 59(e). *See generally Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1489 (1971).

The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. *See, e. g., Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. at 230, 9 L.Ed.2d at 225–26; *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80, 86 (1957); *Sherman v. Hallbauer*, 5 Cir. 1972, 455 F.2d 1236, 1242. Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial. *See Lone Star Motor Import v. Citroen Cars*, 5 Cir. 1961, 288 F.2d 69, 75.

■ The types of reasons that might justify denial of permission to amend a pleading include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party. A court may weigh in the movant's favor any prejudice that will arise from denial of leave to amend. *E. g., Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. at 230, 9 L.Ed.2d at 226; *Bamm v. GAF*, 5 Cir. 1981, 651 F.2d 389, 391. That consideration arises only if there are substantial reasons to deny the amendment. Otherwise, rule 15(a) requires the trial judge to grant leave to amend whether or not the movant shows prejudice. Finally, it is appropriate for the court to consider judicial economy and the most expeditious way to dispose of the merits of the litigation. *See Zenith Radio v. Hazeltine Research*, 401 U.S. 321, 329, 91 S.Ct. 795, 801, 28 L.Ed.2d 77, 87 (1971); *Summit Office Park v. United States Steel*, 5 Cir. 1981, 639

F.2d 1278, 1286 (Wisdom, J., dissenting); *Lone Star Motor Import v. Citroen Cars*, 5 Cir. 1961, 288 F.2d 69; *see generally* Fed.R. Civ.Pro. 1.

■ On first consideration, it might appear that Dussouy did delay unduly and that granting leave to amend would prejudice Gulf Coast, for the amendment was proposed after dismissal of the action at the pre-trial conference and one week before the trial date. But mere passage of time need not result in refusal of leave to amend; on the contrary, it is only *undue* delay that forecloses amendment. Amendment can be appropriate as late as trial or even after trial; *see* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1488 (1971); *see also* Fed.R.Civ.Pro. 15(b). Instances abound in which appellate courts on review have required that leave to amend be granted after dismissal or entry of judgment. For instance, in *Foman v. Davis*, the plaintiff alleged breach of an oral contract. When the district court dismissed on the basis of the defendant's argument that the Statute of Frauds rendered the contract unenforceable, the plaintiff moved to vacate the dismissal and to amend to sue in quantum meruit. The Supreme Court required that the amendment be permitted even though it changed the theory of the case. 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *accord, Bamm v. GAF*, 5 Cir. 1981, 651 F.2d 389; *Lone Star Motor Import v. Citroen Cars*, 5 Cir. 1961, 288 F.2d 69; *Sherman v. Hallbauer*, 5 Cir. 1972, 455 F.2d 1236.[2]

2. At some point, of course, the delay may be so long that the burden of persuasion shifts to the movant. *See Gregory v. Mitchell*, 5 Cir. 1981, 634 F.2d 199, 203. Such a shift becomes appropriate, though, only if the delay imposes on the court, requiring it, for instance, to try the case on various theories seriatim, or if the delay presents the possibility of serious prejudice to the opponent. That is not the case here, as our discussion of prejudice and litigation considerations will show.

A shift in the burden is more likely to occur if the trial court has disposed of the case on the merits, as in the case of summary judgment or judgment after a full trial. Then, the concerns

of finality in litigation become more compelling, and the litigant has had the benefit of a day in court, in some fashion, on the merits of his claim. *See, e. g., id.; Freeman v. Continental Gin*, 5 Cir. 1967, 381 F.2d 459, 469 70; *cf. Griggs v. Hinds Junior College*, 5 Cir. 1977, 563 F.2d 179 (per curiam) (granting leave to amend is especially appropriate when trial court has dismissed the complaint for failure to state a cause of action). Nevertheless, there is no blanket rule that denial of leave to amend after summary judgment is always appropriate. *E. g., Sherman v. Hallbauer*, 5 Cir. 1972, 455 F.2d 1236.

Dussouy moved to amend within a reasonable time—41 days—after entry of the dismissal of Allstate necessitated amendment and promptly upon the decision of the trial court that held the pleadings defective. Thus delay alone cannot justify the decision of the trial court. Nor is this a case of bad faith on the part of the moving party. On the contrary, the entire pleading problem arose from Dussouy's *voluntary* dismissal of Allstate once discovery revealed that the allegation of conspiracy against Allstate was unfounded. If anything, that tends to establish Dussouy's good faith. It is true that Dussouy was aware of the facts alleged in the proposed amendment from the beginning. In other circumstances, that awareness of facts and failure to include them in the complaint might give rise to the inference that the plaintiff was engaging in tactical maneuvers to force the court to consider various theories seriatim. In such a case, where the movant first presents a theory difficult to establish but favorable and, only after that fails, a less favorable theory, denial of leave to amend on the grounds of bad faith may be appropriate. *See Zenith Radio v. Hazeltine Research*, 401 U.S. 321, 332–33, 91 S.Ct. 795, 803, 28 L.Ed.2d 77, 88–89 (1971) (alternative holding); *Gregory v. Mitchell*, 5 Cir. 1981, 634 F.2d 199, 203; *Freeman v. Continental Gin*, 5 Cir. 1967, 381 F.2d 459. But in this case, Dussouy was not aware that those facts were necessary to his claim, and indeed, as our disposition of the Louisiana law questions will show, was justified in thinking them unnecessary. In *Lone Star Motor Import v. Citroen Cars*, 5 Cir. 1961, 288 F.2d 69, we held that the failure to allege known facts in support of an allegation of jurisdiction did not preclude amendment where counsel reasonably relied on a state long-arm statute that, though of questionable constitutionality, had never been overruled. Similarly, we think that where the failure to include in the complaint a known theory of the case arises not from an attempt to gain tactical advantages but from a reasonable belief that the theory is unnecessary to the case, denial of leave to amend is inappropriate.

The final factor relating to the movant's conduct is whether he has repeatedly failed to cure deficiencies by amendments previously allowed. Although Dussouy did fail to cure the deficiencies in his original complaint with his first amendment, his second amendment solved the problem. The current deficiencies perceived by the trial court arise out of Dussouy's changed theory of the case upon his discovery that Allstate did not conspire with Gulf Coast; they are not simply a continuation of the deficiencies at issue in the initial challenges to Dussouy's complaint. Dussouy cannot be said to have repeatedly failed to cure *this* perceived deficiency.

In addition to the movant's conduct, we must consider the possible prejudice to Gulf Coast. We foresee no substantial prejudice arising from granting the motion to amend. The pleadings as they stand have given Gulf Coast adequate notice of the transactions at issue; although the other parties to the alleged conspiracy have changed, the challenged conduct of Gulf Coast is essentially the same as that challenged in the initial pleadings. Of course, should the new theory necessitate reiteration of discovery proceedings, Gulf Coast would be prejudiced. But the trial court can avoid any prejudice from that source, for it has discretion to tax the costs of the repeated discovery proceedings against Dussouy. *See Bamm v. GAF*, 5 Cir. 1981, 651 F.2d 389, 392 n.5.

Finally, we look at the question from the perspective of the court. The overriding consideration appears in rule 1, which directs that "[t]hese rules .... shall be construed to secure the just, speedy and inexpensive determination of every action". Fed.R.Civ.Pro. 1. Denial of the motion for leave to amend violates that directive. If the plaintiff cannot amend, his proper recourse is to file a new action alleging a conspiracy between Gulf Coast and its lawyers. Assuming, as counsel at oral argument conceded, that there is no res judicata

bar,[3] the action would proceed on the basis of the new complaint—the functional equivalent of granting the motion to amend. All that is accomplished is that the case is set back on the docket, and disposition of the merits delayed, a result that rule 1 directs us to avoid and that undercuts the policy of the federal rules in favor of consolidating litigation to facilitate an efficient and expeditious resolution of disputes. See Fed. R.Civ.Pro. 42(a); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2381 (1971). Full consideration of the interests of the litigants and of the goal of efficient resolution of disputes, then, requires that Dussouy be granted an opportunity to have his claim heard on the merits without filing a new action. The discretion of the trial court simply was not broad enough to allow denial of the motion to amend in the circumstances this case presents.[4]

**II. Did the plaintiff's second amended complaint state a claim sufficient to withstand the motion to dismiss?**

Our disposition of the appeal of the denial of leave to amend will require remand of this case for trial. At trial, the plaintiff may still wish to proceed on the theories that he argues are reflected in his second amended complaint and, he urges, state cognizable claims under Louisiana law. Consequently, it is necessary for us to examine the dismissal of the second amended complaint.

**A. *Tortious interference with business.***

Paragraph X of the plaintiff's original complaint alleged a tortious interference with business. Allstate directed its motion for a more definite statement in part to

that allegation, and the plaintiff amended that paragraph. Originally Paragraph X read:

### X

That, furthermore, defendants tortiously interferred [sic] in plaintiff's business and caused him to suffer the following damages:

[Itemization of damages omitted].

In response to the motion for a more definite statement, the plaintiff filed the following statement:

3. Plaintiff amends paragraph X of his complaint to *include* the following:

### X

By prohibiting and preventing the Gilmores from buying insurance through John W. Dussouy, Jr. without rational basis or reason the defendants prevented plaintiff from conducting his business or earning a living by way of collecting commissions on premiums paid.

The defendant, Allstate Insurance Company, participated in this tortious interference by agreeing with Gulf Coast Investment Corporation to have Gulf Coast refuse to make loans on homes insured by companies other than Allstate Insurance Company and alternatively to refuse the [sic] accept certain policies without rational basis or reason.

[Itemization of damages omitted].

(Emphasis added).

■■■■ In its brief, Gulf Coast contends that the amended complaint supersedes the original complaint, so that tortious interfer-

---

3. If there is a res judicata bar, then denial of the motion would result in substantial prejudice to Dussouy. That prejudice would provide a strong basis for granting the motion even if there were countervailing considerations. When, as here, there are no strong countervailing considerations, the potential prejudice would compel us to grant leave to amend. *Bamm v. GAF*, 5 Cir. 1981, 651 F.2d 389, 392; *Lone Star Motor Import v. Citroen Cars*, 5 Cir. 1961, 288 F.2d 69, 76.

4. We do not understand the plaintiff to request leave to amend his complaint to add Gulf Coast's lawyers as parties. Instead, he alleges a conspiracy but sues only one conspirator, which he is free to do. *See* 16 Am.Jur.2d, *Conspiracy* § 66 (1979). The addition of parties would raise questions under rule 15(c), Fed.R.Civ.Pro., as to whether the amendment related back in time to the date of the original complaint for purposes of the application of the prescription provisions to the new parties. We need not, nor do we, express any opinion on those questions.

ence with business is no longer an issue in the case. We think that that argument has no merit. Of course, the proposition that the amended complaint may supersede the original is valid. *Wilson v. First Houston Investment Corp.*, 5 Cir. 1978, 566 F.2d 1235, 1237–38, *vacated on other grounds*, 444 U.S. 959, 100 S.Ct. 442, 62 L.Ed.2d 371 (1979); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1476 (1971). In this case, though, the amended complaint[5] continues to state a claim based on tortious interference. The amendment only added allegations to Paragraph X; it did not eliminate the original Paragraph, so the opening allegation that both defendants interfered survived the amendment. Furthermore, the second subparagraph of the amendment clearly refers to the first subparagraph as a tortious interference, and the first subparagraph refers to actions by *both* defendants. The dismissal of Allstate, therefore, does not eliminate the allegation of tortious interference by Gulf Coast. Finally, the liberal approach of the federal rules to pleading requires no recitation of formulas. Even if the complaint did not explicitly identify "tortious interference with business" as the legal basis for recovery, if the facts alleged state a claim upon which relief can be granted for tortious interference, we would be compelled to reverse. *Robertson v. Johnston*, 5 Cir. 1967, 376 F.2d 43, 44. *See also Hildebrand v. Honeywell*, 5 Cir. 1980, 622 F.2d 179, 181.

The question then becomes whether the plaintiff can prove any set of facts under which he is entitled to recover for tortious interference. *See McLain v. Real Estate Investment Board*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80, 84 (1957). Article 2315 of the Louisiana Civil Code provides the general authority for recovery for damages arising from offenses and quasi offenses: "Every

act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The Louisiana Supreme Court has recognized a cause of action arising under article 2315 for tortious interference with business. *Graham v. St. Charles St. Railroad*, 47 La.Ann. 1656, 18 So. 707 (1895).

Contrary to the suggestion in Gulf Coast's brief, we conclude that conspiracy is not an element of the cause of action under article 2315 for tortious interference with business. In *Graham* itself, there was no allegation of conspiracy. There, the foreman of a railroad threatened to discharge all employees who dealt with the plaintiff. Noting the malicious motivation, the court held that the plaintiff could recover damages from the foreman even though ordinarily an employer is free to select his employees as he pleases. *See also Deon v. Kirby Lumber*, 162 La. 671, 111 So. 55 (1926); W. Prosser, Handbook of the Law of Torts § 130 (4th ed. 1971). An individual, regardless of his motive, has an absolute right to refuse to deal with another. *See, e. g., McGee v. Collins*, 156 La. 291, 100 So. 430, 435 (1924); *Joslyn v. Manship*, 238 So.2d 20 (La.App.1970), *writ refused*, 256 La. 883, 239 So.2d 541 (1970). The right to influence others not to deal, however, is not as broad. *See Graham v. St. Charles St. Railroad*, 47 La.Ann. 1656, 18 So. 707 (1895); *Lewis v. Huie-Hodge Lumber*, 121 La. 658, 46 So. 685, 687 (1908) (dictum); *Joslyn v. Manship*, 238 So.2d 20, 24 (La.App.1970), *writ refused*, 256 La. 883, 239 So.2d 541 (1970); Restatement (Second) of Torts §§ 766B, 767 (1979); *see generally Developments in the Law—Competitive Torts*, 77 Harv.L.Rev. 888, 926–27 (1964). In that situation, Louisiana law protects the businessman from "malicious and wanton interference", permitting only interferences designed to protect a legitimate interest of the actor.[6] *See Lewis v. Huie-Hodge*, 121

---

5. The trial judge considered and granted the motion to dismiss on the day of the pretrial conference. As a result, no pre-trial order was entered in this case, and we need not consider whether, had the trial judge adopted the proposed pre-trial order, tortious interference would have remained an issue.

6. The only case, a very old one, that appeared to recognize a right to interfere maliciously, *Orr v. Home Mutual Insurance Company*, 12

La. 658, 46 So. 685, 687 (1908); *McGee v. Collins*, 156 La. 291, 100 So. 430, 435 (1924); W. Prosser, Handbook of the Law of Torts § 130 (4th ed. 1971).

■ Gulf Coast's argument that, to take the case outside the area of absolute right, Dussouy must show a conspiracy, misreads the cases.[7] Dussouy need show only that Gulf Coast improperly influenced others and not that others agreed with Gulf Coast. Dussouy has already alleged that as a result of Gulf Coast's actions, others did not deal with him. But he must also establish that the interference was improper. *See, e. g., Deon v. Kirby Lumber*, 162 La. 671, 111 So. 55 (1926); Restatement (Second) of Torts § 766B (1979). Gulf Coast is correct in its contentions that the plaintiff has not alleged malice and that malice is a necessary

element of the cause of action. Nonetheless, we do not view that failure as grounds for dismissal. As our reasoning in Part I of this opinion shows, the appropriate course is to allow the plaintiff to amend his complaint to make the necessary allegations.

### B. Conspiracy in restraint of trade.

■ To establish a conspiracy in restraint of trade in violation of La.Rev.Stat. Ann. § 51:121 et seq. (West 1965), the plaintiff must, of course, establish a conspiracy. The second amended complaint concededly alleges no conspiracy between Gulf Coast and any third party. Nevertheless, we hold the complaint sufficient to state a claim under La.Rev.Stat.Ann. § 51:121 et seq.; in certain circumstances a corporation can conspire with its employees.[8]

---

La.Ann. 255 (La. 1857), actually involved the protection of a legitimate interest of the actors, and the opinion has been criticized by the Louisiana Supreme Court as "too broad". *McGee v. Collins*, 156 La. 291, 100 So. 430, 435 (1924).

*Joslyn v. Manship*, 238 So.2d 20 (La.App. 1970), *writ refused*, 256 La. 883, 239 So.2d 541 (1970), does not change our conclusions. There, the plaintiffs alleged that the defendants capriciously refused either to recognize them as advertising agents or to deal with them. As a result, a client, who had purchased television time from the defendants through the plaintiffs, ceased dealing with the plaintiffs and dealt directly with the defendants. The court refused to allow recovery on a theory of tortious interference with business, stating that there is an absolute right to refuse to deal, even if the motivation is malicious. For several reasons, though, we do not think that this case supports Gulf Coast's position. First, the court in *Joslyn* proceeded to allow recovery on an unjust enrichment theory. Had it been faced with the prospect of no recovery at all for the plaintiffs, it might have held differently on the claim of tortious interference. Second, the court apparently agreed with the principle that there can be liability for maliciously influencing third parties but did not perceive the situation as one implicating the problem of influencing third parties, for, after recognizing that there is an absolute right maliciously to refuse to deal, the court stated "one can not always, from such motives, influence another person to do the same without incurring legal liability". *Id.* at 24. Finally, even if *Joslyn* did recognize an absolute right maliciously to influence third parties not to deal with another, we would be hesitant to recognize the decision of a lower court that the Louisiana Supreme Court refused to consider and that did not explicitly reject

past Louisiana Supreme Court decisions as superseding those earlier decisions, particularly when those earlier decisions are in accord with the majority view, *see* Restatement (Second) of Torts §§ 766B, 767 (1979).

7. Although *Lewis* did distinguish the earlier case of *Webb v. Drake*, 52 La.Ann. 290, 26 So. 791 (1899), because of the absence of a conspiracy in *Lewis*, 46 So. at 686, we do not perceive a requirement of a conspiracy. *Lewis* also distinguished *Webb* on the ground that the defendant in *Webb* was not in legitimate competition with the plaintiff, unlike the *Lewis* situation. *Id.* at 687. Also, *Lewis* recognized the *Graham* case as good authority, *see id.* at 686 - 87, and the court there allowed recovery without any allegation of conspiracy.

8. The relevant statutory language is provided by La.Rev.Stat.Ann. §§ 51:122, 123, and 137:

§ 122. Contracts, combinations and conspiracies in restraint of trade illegal; penalty
Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal.
Whoever violates this Section shall be fined not more than five thousand dollars, or imprisoned, with or without hard labor, not more than three years, or both.
§ 123. Monopolizing trade or commerce prohibited; penalty
No person shall monopolize, or attempt to monopolize, or combine or conspire with any other person to monopolize any part of the trade or commerce within this state.
Whoever violates this Section shall be fined not more than five thousand dollars, or imprisoned, with or without hard labor, not more than three years, or both.

The concept of intracorporate conspiracy raises difficult conceptual problems, and the courts have reached varying results on whether such a conspiracy is possible. For purposes of federal antitrust law, a corporation cannot conspire with its officers or employees. *Nelson Radio & Supply v. Motorola*, 5 Cir. 1952, 200 F.2d 911, *cert. denied*, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953); *accord, Hatley v. American Quarter Horse Association*, 5 Cir. 1977, 552 F.2d 646. That rule is not unquestioned. *See Novotny v. Great American Savings & Loan Association*, 3 Cir. 1978, 584 F.2d 1235, 1257 n.117 (en banc), *vacated on other grounds*, 442 U.S. 336, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *see generally* L. Sullivan, Handbook of the Law of Antitrust § 114 (1977). The rationale for that rule is two-fold: first, agency principles attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor, negating the multiplicity of actors necessary to conspiracy, and, second, applying the prohibition of combinations in restraint of trade contained in section 1 of the Sherman Act to activities by a single firm renders meaningless section 2, which prohibits monopolization and attempt to monopolize. *See Nelson Radio & Supply v. Motorola*, 5 Cir. 1952, 200 F.2d 911, 913–14, *cert. denied*, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953); Note, *Intracorporate Conspiracies under 42 U.S.C. § 1985(c)*, 92 Harv.L.Rev. 470, 477–78, 481 (1978).

There are, however, strong arguments against the *Nelson Radio* rule. The original purposes of the rule attributing agents' acts to a corporation were to enable corporations to act, permitting the pooling of resources to achieve social benefits and, in the case of tortious acts, to require a corporation to bear the costs of its business enterprise. But extension of the rule to preclude the possibility of intracorporate conspiracy does not serve either of these goals. *See* Note, *Intracorporate Conspiracies under 42 U.S.C. § 1985(c)*, 92 Harv. L.Rev. 470, 477–78 (1978); *see generally* Note, *Intracorporate Conspiracies under 42 U.S.C. § 1985(c): The Impact of* Novotny v. Great American Savings & Loan Association, 13 Ga.L.Rev. 591, 602–03 (1979). Some courts have found this reasoning persuasive when dealing with problems outside the federal antitrust area. For instance, in *Novotny v. Great American Savings & Loan Association*, 3 Cir. 1978, 584 F.2d 1235 (en banc), *vacated on other grounds*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), the Third Circuit, although it did not consider whether the corporation could be a party to the conspiracy, held that the officers and directors of a single corporation could be liable for conspiracy under 42 U.S.C. § 1985(c). Similarly, a corporation can be convicted of criminal charges of conspiracy based solely on conspiracy with its own employees. *United States v. Consolidated Coal Co.*, 424 F.Supp. 577 (S.D.Ohio 1976); *see Novotny v. Great American Savings & Loan Association*, 3 Cir. 1978, 584 F.2d 1235, 1258 (en banc) (dictum), *vacated on other grounds*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). In these situations, the action by an incorporated collection of individuals creates the "group danger" at which conspiracy liability is aimed, and the view of the corporation as a single legal actor becomes a fiction without a purpose. *See id.*; Note, *Intracorporate Conspiracies under 42 U.S.C. § 1985(c)*, 92 Harv.L.Rev. 470, 478–80 (1978). Also, courts have fashioned an exception to the rule that a corporation cannot conspire with its employees: when the officers of a corporation act for their own personal purposes, they become independent actors, who can conspire with the corporation. *See Johnston v. Baker*, 3 Cir. 1971, 445 F.2d 424; R. Eickhoff, *Fletcher Cyclopedia of the Law of Private Corporations* §§ 4884, 5032.1 (1978).

§ 137. Damages recoverable for violation of law

Any person who is injured in his business or property by any person by reason of any act or thing forbidden by this Part may sue in any court of competent jurisdiction and shall recover threefold the damages sustained by him, the cost of suit, and a reasonable attorney's fee.

Apparently Louisiana has found the arguments against the *Nelson Radio* rule persuasive even in the antitrust area, or, at the very least, it recognizes exceptions to the rule. Thus, in *Tooke & Reynolds v. Bastrop Ice & Storage*, 171 La. 781, 135 So. 239 (1931), the Louisiana Supreme Court held that a corporation "with its individual members, shareholders, and managers formed a combination" that could violate the prohibition of combinations in restraint of trade. *Id.*, 135 So. at 242. More recently, the Louisiana appellate courts have held it error, although harmless error, to refuse a requested jury instruction that a corporation could conspire with its own employees. *Economy Carpets Manufacturers & Distributors v. Better Business Bureau*, 361 So.2d 234 (La.App.1978), *writ denied*, 362 So.2d 1387 (La.1978), *cert. denied*, 440 U.S. 915, 99 S.Ct. 1231, 59 L.Ed.2d 464 (1979). The *Economy Carpets* court held that the error was harmless because there was no evidence that the employees conspired, indicating that not every action by a corporation will be a conspiracy. Louisiana courts, then, may accept the view that a conspiracy in restraint of trade between a corporation and its employees is possible only when the employees act for personal purposes. Fortunately, we need not decide that point. Although it is unclear whether the court meant that there was no evidence of any agreement (which would suggest that employees are actors independent of the corporation only when they act for their own purposes), or that there was no evidence of the malicious agreement in restraint of trade requisite under Louisiana law, it is clear that the court thought that a corporation could in some circumstances conspire with its employees in violation of La.Rev. Stat.Ann. § 51:121 et seq. We must accept the early holding of the Louisiana Supreme Court in *Tooke & Reynolds* and the more recent statement of the Louisiana appellate court, allowed to stand by the Louisiana Supreme Court, as authoritative statements of Louisiana law. And, although Louisiana law differs from the federal antitrust rule, *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), mandates application of the Louisiana rule. As a consequence, we cannot say that the plaintiff can establish no set of facts upon which he might prevail, so the action should not be dismissed.

 Nor is our conclusion changed by the plaintiff's failure to state specifically in the complaint that Gulf Coast conspired with its own employees. The form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim. *See Robertson v. Johnston*, 5 Cir. 1967, 376 F.2d 43, 44; *see also Hildebrand v. Honeywell*, 5 Cir. 1980, 622 F.2d 179, 181. Examining the allegations of the complaint, we find actions by Gulf Coast that would support recovery under La.Rev.Stat. § 51:121 et seq. if performed by a conspiracy; an allegation of a conspiracy is implicit because Gulf Coast necessarily acts with its employees. The entire complaint, then, states an actionable claim under La.Rev.Stat. § 51:121 et seq. The trial court may require the plaintiff to state that claim with greater particularity, but we reiterate: where the plaintiff may assert a valid claim, even if inartfully stated, the liberal approach of the federal rules requires that the plaintiff be given the opportunity to state his claim and to have it considered on the merits at trial or on motion for summary judgment.

REVERSED AND REMANDED.